**Fill in this information to identify the case:**

Debtor 1 _Randy W. Polons_

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the MIDDLE District of PENNSYLVANIA

Case number 5:24-bk-00794-MJC

## Official Form 410
# Proof of Claim
04/22

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. | What is the current creditor? | CSMC 2019-RPL7 TRUST<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. | Has this claim been acquired from someone else | [X] No<br>[ ] Yes.  From whom? _____ |
| 3. | Where should notices and payments to the creditor be sent?<br>Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g) | **Where should notices to the creditor be sent?** / **Where should payments to the creditor be sent?** (if different)<br><br>Select Portfolio Servicing, Inc. / Select Portfolio Servicing, Inc.<br>Name / Name<br><br>P.O. Box 65250 / Attn: Remittance Processing<br>Number     Street / P.O. Box 65450<br> / Number     Street<br><br>Salt Lake City, UT 84165-0250 / Salt Lake City UT 84165-0450<br>City     State     ZIP Code / City     State     ZIP Code<br><br>Contact phone 1-800-258-8602 / Contact phone 1-800-258-8602<br><br>Contact email N/A / Contact email N/A<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one)<br>— — — — — — — — — — — — — — — — — — — — — — — — |
| 4. | Does this claim amend one already filed? | [X] No<br>[ ] Yes.  Claim number on court claim registry (if known) | Filed on _____<br>MM/DD/YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | [X] No<br>[ ] Yes.  Who made the earlier filing? _____ |

Official Form 410A **Mortgage Proof of Claim Attachment Page 1 of 3**

| 6. | Do you have any number you use to identify the debtor | [ ] No<br>[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>4926</u> | |
|---|---|---|---|
| 7. | How much is the claim? | $ <u>30,015.20</u> | Does this amount include interest or other charges?<br>[ ] No<br>[X] Yes.     Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(a) |

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>    <u>MONEY LOANED</u> |
|---|---|---|

| 9. | Is all or part of the claim secured? | [ ] No<br>[X] Yes   The claim is secured by a lien on property.<br><br>**Nature of property:**   <u>1365 TRAILWOOD LAKE RD, WILKES-BARRE, PA 18702</u><br><br>[X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this Proof of Claim.<br><br>[ ]   Motor vehicle<br>[ ]   Other. Describe:<br><br>**Basis for perfection:**   <u>Mortgage/Deed of Trust</u><br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**            $<br><br>**Amount of the claim that is secured:**   $ <u>30,015.20</u><br><br>**Amount of the claim that is unsecured:** $<u>_____</u>   (The sum of the secured and unsecured amounts should match the amount in line 7)<br><br>**Amount necessary to cure any default as of the date of the petition:**   <u>$30,015.20</u> ** Total Debt **<br><br>**Annual Interest Rate** (when case was filed) <u>6.6000</u>%<br><br>[X]   Fixed<br>[ ]   Variable |
|---|---|---|

| 10. | Is this claim based on a lease? | [X]  No<br>[ ]  Yes. **Amount necessary to cure any default as of the date of the petition.**   $<u>_____</u> |
|---|---|---|

| 11. | Does this claim involve a right to setoff? | [X]  No<br>[ ]  Yes. Identify the property <u>_____</u> |
|---|---|---|

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | [X] No [ ] Yes. Check one: | Amount entitled to priority |
|---|---|---|---|
| | | [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | [ ] Up to $3,350* of deposits toward purchase, lease or rental of property or services for personal, family, or household use. 11 U.S.C. §507(a)(7). | $_____ |
| | | [ ] Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. §507(a)(4). | $_____ |
| | | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. §507(a)(8). | $_____ |
| | | [ ] Contributions to an employee benefit plan. 11 U.S.C. §507(a)(5). | $_____ |
| | | [ ] Other. Specify subsection of 11 U.S.C. §507(a)(___) that applies. | $_____ |
| | | * Amount are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box

[ ] I am the creditor.
[X] I am the creditor's attorney or authorized agent.
[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
[ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3004.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    6/11/2024
               MM/DD/YYYY

/s/ Michelle L. McGowan
   Signature

**Print the name of the person who is completing and signing this claim:**

Michelle L. McGowan

Authorized Agent for Secured Creditor
Robertson, Anschutz, Schneid, Crane & Partners, PLLC
13010 Morris Rd. Suite 450
Alpharetta, GA 30004
470-321-7112                mimcgowan@raslg.com

[ ] Noteholder is the owner of the note.
[X] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.
[ ] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.
[ ] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.
[ ] Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.

# Mortgage Proof of Claim Attachment

(12/23)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1  Mortgage and Case Information | Part 2  Total Debt Calculation | | Part 3  Arrearage as of Date of the Petition | | Part 4  Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|
| Case number: 5:24-bk-00794-MJC | Principal balance: | $22,440.89 | Principal Due: | NA | Principal & interest: | NA |
| | | | Interest Due: | NA | | |
| Debtor 1: Randy W. Polons | Interest due: | $1,848 65 | Prepetition fees due: | NA | Monthly escrow: | NA |
| Debtor 2: - | Fees, costs due: | $5,925 82 | Escrow deficiency for funds advanced: | NA | Private mortgage insurance: | NA |
| Last 4 digits to identify: 4926 | Escrow deficiency for funds advanced: | $0 00 | Projected escrow shortage: | NA | **Total monthly payment** | **NA** |
| Creditor: CSMC 2019-RPL7 Trust | Less total funds on hand: - | ($200.16) | Less funds on hand: | NA | | |
| Servicer: Select Portfolio Servicing, Inc. | Total debt | | **Total prepetition arrearage** | | | |
| Fixed accrual/daily simple interest/other: FIXED | | **$30,015.20** | | **$30,015.20** | | |
| | | | | **\*\*Total Debt\*\*** | | |

### Part 5  Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Starting Balance | | | | | | | | | | | $0 00 | |
| 4/11/2022 | | | $0 40 | Interest On Advance | | | | | | $0 40 | | | | | $0 40 | |
| 5/11/2022 | | | $2 00 | Interest On Advance | | | | | | $2 00 | | | | | $2 40 | |
| 6/13/2022 | | | $2 20 | Interest On Advance | | | | | | $2 20 | | | | | $4 60 | |
| 7/11/2022 | | | $1 96 | Interest On Advance | | | | | | $1 96 | | | | | $6 56 | |
| 7/13/2022 | | | ($0 32) | Interest On Advance | | | | | | ($0 32) | | | | | $6 24 | |
| 8/11/2022 | | | $0 14 | Interest On Advance | | | | | | $0 14 | | | | | $6 38 | |
| 8/20/2022 | $499 84 | | | Payment Due | 8/20/2022 | $499 84 | | | | | | $23,557 83 | $0 00 | $6 38 | | |
| 9/6/2022 | | $499 84 | | Regular Payment | 8/20/2022 | $0 00 | $370 27 | $129 57 | | | | $23,187 56 | $0 00 | $6 38 | | $0 00 |
| 9/20/2022 | $499 84 | | | Payment Due | 9/20/2022 | $499 84 | | | | | | $23,187 56 | $0 00 | $6 38 | | $0 00 |
| 10/5/2022 | | | $24 99 | Late Charge | 9/20/2022 | $499 84 | | | | $24 99 | | $23,187 56 | $0 00 | $31 37 | | $0 00 |
| 10/20/2022 | $499 84 | | | Payment Due | 9/20/2022 | $999 68 | | | | | | $23,187 56 | $0 00 | $31 37 | | $0 00 |
| 11/4/2022 | | | $24 99 | Late Charge | 9/20/2022 | $999 68 | | | | $24 99 | | $23,187 56 | $0 00 | $56 36 | | $0 00 |
| 11/16/2022 | | | $19 99 | Prop Inspection | 9/20/2022 | $999 68 | | | | $19 99 | | $23,187 56 | $0 00 | $76 35 | | $0 00 |
| 11/20/2022 | $499 84 | | | Payment Due | 9/20/2022 | $1,499 52 | | | | | | $23,187 56 | $0 00 | $76 35 | | $0 00 |
| 11/28/2022 | | | $350 00 | BPO/Appraisal | 9/20/2022 | $1,499 52 | | | | $350 00 | | $23,187 56 | $0 00 | $426 35 | | $0 00 |
| 12/5/2022 | | | $24 99 | Late Charge | 9/20/2022 | $1,499 52 | | | | $24 99 | | $23,187 56 | $0 00 | $451 34 | | $0 00 |
| 12/12/2022 | | | $0 73 | Interest On Advance | 9/20/2022 | $1,499 52 | | | | $0 73 | | $23,187 56 | $0 00 | $452 07 | | $0 00 |
| 12/20/2022 | $499 84 | | | Payment Due | 9/20/2022 | $1,999 36 | | | | | | $23,187 56 | $0 00 | $452 07 | | $0 00 |
| 1/3/2023 | | $1,199 84 | | Suspense Payment | 9/20/2022 | $1,999 36 | | | | | $1,199 84 | $23,187 56 | $0 00 | $452 07 | | $1,199 84 |
| 1/11/2023 | | | $2 00 | Interest On Advance | 9/20/2022 | $1,999 36 | | | | $2 00 | | $23,187 56 | $0 00 | $454 07 | | $1,199 84 |
| 1/15/2023 | | | $19 99 | Prop Inspection | 9/20/2022 | $1,999 36 | | | | $19 99 | | $23,187 56 | $0 00 | $474 06 | | $1,199 84 |
| 1/20/2023 | $499 84 | | | Payment Due | 9/20/2022 | $2,499 20 | | | | | | $23,187 56 | $0 00 | $474 06 | | $1,199 84 |
| 1/24/2023 | | | | Regular Payment | 9/20/2022 | $1,999 36 | $372 31 | $127 53 | | ($999 68) | | $22,815 25 | $0 00 | $474 06 | | $200 16 |
| 1/24/2023 | | | | Regular Payment | 10/20/2022 | $1,499 52 | $374 36 | $125 48 | | | | $22,440 89 | $0 00 | $474 06 | | $200 16 |
| 2/6/2023 | | | $24 99 | Late Charge | 11/20/2022 | $1,499 52 | | | | $24 99 | | $22,440 89 | $0 00 | $499 05 | | $200 16 |
| 2/13/2023 | | | $2 29 | Interest On Advance | 11/20/2022 | $1,499 52 | | | | $2 29 | | $22,440 89 | $0 00 | $501 34 | | $200 16 |
| 2/20/2023 | $499 84 | | | Payment Due | 11/20/2022 | $1,999 36 | | | | | | $22,440 89 | $0 00 | $501 34 | | $200 16 |
| 2/23/2023 | | | $19 99 | Prop Inspection | 11/20/2022 | $1,999 36 | | | | $19 99 | | $22,440 89 | $0 00 | $521 33 | | $200 16 |
| 3/13/2023 | | | $2 01 | Interest On Advance | 11/20/2022 | $1,999 36 | | | | $2 01 | | $22,440 89 | $0 00 | $523 34 | | $200 16 |
| 3/20/2023 | $499 84 | | | Payment Due | 11/20/2022 | $2,499 20 | | | | | | $22,440 89 | $0 00 | $523 34 | | $200 16 |
| 3/31/2023 | | | $0 60 | FC COSTS | 11/20/2022 | $2,499 20 | | | | $0 60 | | $22,440 89 | $0 00 | $523 94 | | $200 16 |
| 3/31/2023 | | | $12 00 | FC COSTS | 11/20/2022 | $2,499 20 | | | | $12 00 | | $22,440 89 | $0 00 | $535 94 | | $200 16 |
| 4/2/2023 | | | $250 00 | FC COSTS | 11/20/2022 | $2,499 20 | | | | $250 00 | | $22,440 89 | $0 00 | $785 94 | | $200 16 |
| 4/3/2023 | | | $301 02 | FC ATTY FEES | 11/20/2022 | $2,499 20 | | | | $301 02 | | $22,440 89 | $0 00 | $1,086 96 | | $200 16 |
| 4/5/2023 | | | $19 99 | Prop Inspection | 11/20/2022 | $2,499 20 | | | | $19 99 | | $22,440 89 | $0 00 | $1,106 95 | | $200 16 |
| 4/11/2023 | | | $1 11 | Interest On Advance | 11/20/2022 | $2,499 20 | | | | $1 11 | | $22,440 89 | $0 00 | $1,108 06 | | $200 16 |
| 4/20/2023 | $499 84 | | | Payment Due | 11/20/2022 | $2,999 04 | | | | | | $22,440 89 | $0 00 | $1,108 06 | | $200 16 |
| 5/16/2023 | | | $350 00 | BPO/Appraisal | 11/20/2022 | $2,999 04 | | | | $350 00 | | $22,440 89 | $0 00 | $1,458 06 | | $200 16 |
| 5/20/2023 | $499 84 | | | Payment Due | 11/20/2022 | $3,498 88 | | | | | | $22,440 89 | $0 00 | $1,458 06 | | $200 16 |
| 5/25/2023 | | | ($350 00) | BPO/Appraisal | 11/20/2022 | $3,498 88 | | | | ($350 00) | | $22,440 89 | $0 00 | $1,108 06 | | $200 16 |
| 6/13/2023 | | | $19 99 | Prop Inspection | 11/20/2022 | $3,498 88 | | | | $19 99 | | $22,440 89 | $0 00 | $1,128 05 | | $200 16 |
| 6/20/2023 | $499 84 | | | Payment Due | 11/20/2022 | $3,998 72 | | | | | | $22,440 89 | $0 00 | $1,128 05 | | $200 16 |
| 7/19/2023 | | | $19 99 | Prop Inspection | 11/20/2022 | $3,998 72 | | | | $19 99 | | $22,440 89 | $0 00 | $1,148 04 | | $200 16 |
| 7/20/2023 | $499 84 | | | Payment Due | 11/20/2022 | $4,498 56 | | | | | | $22,440 89 | $0 00 | $1,148 04 | | $200 16 |
| 8/20/2023 | $499 84 | | | Payment Due | 11/20/2022 | $4,998 40 | | | | | | $22,440 89 | $0 00 | $1,148 04 | | $200 16 |
| 8/26/2023 | | | $19 99 | Prop Inspection | 11/20/2022 | $4,998 40 | | | | $19 99 | | $22,440 89 | $0 00 | $1,168 03 | | $200 16 |
| 9/11/2023 | | | $154 00 | FC COSTS | 11/20/2022 | $4,998 40 | | | | $154 00 | | $22,440 89 | $0 00 | $1,322 03 | | $200 16 |
| 9/11/2023 | | | $75 00 | FC COSTS | 11/20/2022 | $4,998 40 | | | | $75 00 | | $22,440 89 | $0 00 | $1,397 03 | | $200 16 |
| 9/13/2023 | | | $690 00 | FC ATTY FEES | 11/20/2022 | $4,998 40 | | | | $690 00 | | $22,440 89 | $0 00 | $2,087 03 | | $200 16 |
| 9/13/2023 | | | $19 54 | FC COSTS | 11/20/2022 | $4,998 40 | | | | $19 54 | | $22,440 89 | $0 00 | $2,106 57 | | $200 16 |
| 9/20/2023 | $499 84 | | | Payment Due | 11/20/2022 | $5,498 24 | | | | | | $22,440 89 | $0 00 | $2,106 57 | | $200 16 |
| 9/26/2023 | | | $19 99 | Prop Inspection | 11/20/2022 | $5,498 24 | | | | $19 99 | | $22,440 89 | $0 00 | $2,126 56 | | $200 16 |

Official Form 410A   Mortgage Proof of Claim Attachment   page 1 of 2

Case 5:24-bk-00794-MJC   Doc 32   Filed 07/02/24   Entered 07/02/24 14:33   Desc
Exhibit A   Page 4 of 28

# Mortgage Proof of Claim Attachment: Additional Page

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/11/2023 | | $1 26 | FC COSTS | 11/20/2022 | $5,498 24 | | $1 26 | $22,440 89 | $0 00 | $2,127 82 | $200 16 |
| 10/20/2023 | $499 84 | | Payment Due | 11/20/2022 | $5,998 08 | | | $22,440 89 | $0 00 | $2,127 82 | $200 16 |
| 11/2/2023 | | $22 25 | FC COSTS | 11/20/2022 | $5,998 08 | | $22 25 | $22,440 89 | $0 00 | $2,150 07 | $200 16 |
| 11/3/2023 | | $690 00 | FC ATTY FEES | 11/20/2022 | $5,998 08 | | $690 00 | $22,440 89 | $0 00 | $2,840 07 | $200 16 |
| 11/7/2023 | | $19 99 | Prop Inspection | 11/20/2022 | $5,998 08 | | $19 99 | $22,440 89 | $0 00 | $2,860 06 | $200 16 |
| 11/20/2023 | $499 84 | | Payment Due | 11/20/2022 | $6,497 92 | | | $22,440 89 | $0 00 | $2,860 06 | $200 16 |
| 11/27/2023 | | $350 00 | BPO/Appraisal | 11/20/2022 | $6,497 92 | | $350 00 | $22,440 89 | $0 00 | $3,210 06 | $200 16 |
| 12/20/2023 | $499 84 | | Payment Due | 11/20/2022 | $6,997 76 | | | $22,440 89 | $0 00 | $3,210 06 | $200 16 |
| 12/20/2023 | | $30 00 | Prop Inspection | 11/20/2022 | $6,997 76 | | $30 00 | $22,440 89 | $0 00 | $3,240 06 | $200 16 |
| 1/2/2024 | | $2,500 00 | FC COSTS | 11/20/2022 | $6,997 76 | | $2,500 00 | $22,440 89 | $0 00 | $5,740 06 | $200 16 |
| 1/2/2024 | | $36 25 | FC COSTS | 11/20/2022 | $6,997 76 | | $36 25 | $22,440 89 | $0 00 | $5,776 31 | $200 16 |
| 1/20/2024 | $499 84 | | Payment Due | 11/20/2022 | $7,497 60 | | | $22,440 89 | $0 00 | $5,776 31 | $200 16 |
| 1/27/2024 | | $30 00 | Prop Inspection | 11/20/2022 | $7,497 60 | | $30 00 | $22,440 89 | $0 00 | $5,806 31 | $200 16 |
| 2/14/2024 | | $14 51 | FC COSTS | 11/20/2022 | $7,497 60 | | $14 51 | $22,440 89 | $0 00 | $5,820 82 | $200 16 |
| 2/20/2024 | $499 84 | | Payment Due | 11/20/2022 | $7,997 44 | | | $22,440 89 | $0 00 | $5,820 82 | $200 16 |
| 2/22/2024 | | $75 00 | FC COSTS | 11/20/2022 | $7,997 44 | | $75 00 | $22,440 89 | $0 00 | $5,895 82 | $200 16 |
| 3/6/2024 | | $30 00 | Prop Inspection | 11/20/2022 | $7,997 44 | | $30 00 | $22,440 89 | $0 00 | $5,925 82 | $200 16 |
| 3/20/2024 | $499 84 | | Payment Due | 11/20/2022 | $8,497 28 | | | $22,440 89 | $0 00 | $5,925 82 | $200 16 |
| 4/3/2024 | | | BK Filed | 11/20/2022 | $8,497 28 | | | $22,440 89 | $0 00 | $5,925 82 | $200 16 |
| The entity that has the right to foreclose is CSMC 2019-RPL7 Trust by virtue of being owner and holder of note | | | | | | | | | | |

Case 5:24-bk-00794-MJC   Doc 821-1   Filed 07/02/24   Entered 07/02/24 14:49:33   Desc
Exhibit A   Page 5 of 28

## LOAN AGREEMENT
### Including Truth-in-Lending Disclosure

| | |
|---|---|
| **Lender:** (Called "We", "Us", "Our")<br>HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY<br>575 PIERCE STREET<br>SUITE 202<br>KINGSTON, PA 18704 | |
| **Borrowers:** (Called "You", "Your")<br>RANDY W. POLONS<br>1365 TRAILWOOD LAKE ROAD<br>WILKES-BARRE, PA 18702 | ███████ |
| **Date of Loan:** 04/16/2007 | **Loan Number** ███ |

In this agreement, "you", "your" mean the Borrower(s) who signs this agreement. "We", "us" and "our" refer to the Lender. This agreement covers the terms and conditions of your loan. It is important to us that you clearly understand the features of your loan. Please read this agreement carefully, and ask us any questions you may have.

### Truth-in-Lending Disclosure

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost you. | Amount Financed<br><br>The amount of credit provided to you or on your behalf. | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.894% | $54,962.12 ("e") | $64,999.48 | $119,961.60 ("e") |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due ("e") |
|---|---|---|
| 1 | $499.84 | 05/16/2007 |
| 239 | $499.84 | Day 16 of each month thereafter. |

"e" means an estimate

**Assumption:** Someone buying your home cannot assume the remainder of the mortgage on the original terms.

**YOU ARE GIVING US A SECURITY INTEREST IN THE REAL PROPERTY AS DESCRIBED IN THE MORTGAGE AND LOCATED AT:**

1365 TRAILWOOD LAKE ROAD
WILKES-BARRE, PA 18702

| | |
|---|---|
| **Late Charge** | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to 5% of the full amount of the monthly installment. |
| **Prepayment** | You may prepay your loan in full or in part at any time without penalty. If you pay off your loan early, you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

---

The Settlement Statement provides your disbursements and the itemization of the Amount Financed.

---

### ABOUT THE SECURITY:

**Your Obligation to Insure**

You shall keep the structures located on the real property securing your loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is canceled or expires while your loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below.

**Real Property Taxes and Homeowners Insurance**

Homeowners Insurance covering fire and other hazards on the real property security is required, naming us as a loss payee for the term of your loan. You shall pay us on the day that monthly installments are due under this agreement, an additional sum (the "Funds") to be used to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the real property; (b) leasehold payments or ground rents on the real property, if any; (c) premiums for any and all insurance required by us under this agreement and the Mortgage ("Escrow Items"). You will pay us the Funds for Escrow Items unless we waive your obligation to pay the Funds for any or all Escrow Items. We may waive your obligation to pay us Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, you will be solely responsible for paying the amounts due for any Escrow Items directly and, if we require, you shall furnish us with receipts

| | evidencing such payment within such time period as we may reasonably require. |
|---|---|
| **Title Insurance** | Title insurance on the real property security is required, naming us as a loss payee. You must purchase title insurance or its local equivalent protecting our lien on the real property as a condition to obtaining your loan. You may purchase title insurance from any title insurance provider you choose that we reasonably believe provides sufficient financial protection to us. You request such title insurance and authorize us to deduct the costs of the title insurance from your loan proceeds in order to pay the title insurance provider. |
| **Lender's Right to Place Hazard Insurance** | You authorize us, at our option, to obtain hazard insurance coverage on the real property in an amount not greater than the outstanding balance of principal and interest on your loan or, if known to be less, the replacement value of the real property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance. We may choose to add the insurance charges to the unpaid balance of your loan, which will accrue interest at the Contract Rate, or bill you for the annual premium on a periodic basis. The addition of the insurance charges due might increase the amount of your final monthly installment. The cost of lender-placed hazard insurance might be higher than the cost of standard insurance protecting the real property. The lender-placed insurance will not insure the contents of the real property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan. |

## ABOUT YOUR LOAN REPAYMENT:

| SCHEDULED MATURITY DATE | 04/16/2027 | PRINCIPAL | $66,514.78 |
|---|---|---|---|
| MONTHS OF CONTRACT | 240 | | |
| CONTRACT RATE (per year) | 6.600% | | |
| AMOUNT FINANCED | $64,999.48 | | |
| PREPAID FINANCE CHARGES | $1,515.30 | | |

| | |
|---|---|
| **Promise to Pay** | You agree to the terms of this agreement and promise to pay us the principal (Amount Financed plus prepaid finance charges consisting of Origination Fee/Points, Closing Fee and Tax Service Fee) plus interest which is computed at a rate of 6.600% (the "Contract Rate"). You agree to pay us in monthly installments as stated in the Payments provision of this agreement. You also agree to pay us: (a) other charges as provided in this agreement; (b) credit insurance charges, if any; (c) collection costs permitted by applicable law, including reasonable attorneys' fees otherwise due under your Mortgage and (d) any other charges reflected in your settlement statement. |
| **Interest** | Interest will be charged on the unpaid principal until the full amount of principal has been paid. You will pay us interest at a yearly Contract Rate of 6.600%. |
| | The interest rate required by this provision is the rate you will pay both before and after any default as described in this agreement. |
| **Payments** | **Time and Place of Payments** |
| | You will pay us principal and interest by paying your monthly installments. |
| | You will make your monthly installments to us on the same day of each month beginning on or about 05/16/2007. You will make these monthly installments every month until you have paid all of the principal and interest and any other charges described herein that you may owe under this agreement. Your monthly installments will be applied to interest before principal. If, on the Scheduled Maturity Date, 04/16/2027, you still owe amounts under this agreement, you will pay those amounts in full on that date, which amount will include interest at the then current Contract Rate or any such other rate as required by law. |
| | You will make your monthly installments at the address shown on page one or at the address shown on your monthly billing statement or at a different place that we may give you. |
| | **Amount of Monthly Installments** |
| | Your monthly installments will be in the amount of $499.84, plus the amount of any optional insurance or funds for escrow you elected. |
| **Prepayment** | You may prepay your loan in full or in part at any time without penalty. If you pay off your loan early, you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |
| **Late Charge** | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to 5% of the full amount of the monthly installment. |

| | |
|---|---|
| **Bad Check Charge** | You agree to pay $20.00 each time any check or payment is made on your loan by any means, including but not limited to, a check or ACH (our Authorization to Debit Account), which is returned unpaid by your bank or other financial institution for any reason. |
| **Additional Charges** | You agree to pay any amounts actually incurred by us for services rendered in connection with the opening and servicing of your loan, as allowed by law. These amounts may include fees for appraisals, title examination, title insurance or its local equivalent, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Mortgage and other taxes as shown in the Settlement Statement incorporated herein by this reference. You also agree to pay any other amounts incurred by us in connection with the servicing of your loan including any amounts that we may (but need not) pay or that are otherwise due under the Mortgage, incorporated herein by this reference. |
| **Default** | If you fail to make any monthly installment after it becomes due or fail to comply with the terms of the Mortgage, we may require that you pay us, at once and without prior notice or demand, the unpaid balance of your loan plus accrued interest and any applicable charges in this agreement as authorized. |
| **Security Interest** | You agree to give us a security interest in the real property as described in the Mortgage. |

---

## ABOUT OUR RELATIONSHIP:

| | |
|---|---|
| **Exchange of Information** | You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by applicable law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. |
| **Credit Bureau Reporting** | If you fail to fulfill the terms of your loan, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. |
| **Telephone Monitoring** | You agree that we may listen to and/or record telephone calls between you and our representatives for quality assurance purposes. |
| **Insurance** | Credit insurance is optional. Any applicable insurance disclosures are included with this agreement and are incorporated herein by this reference. |
| **Alternative Dispute Resolution** | The terms of the Arbitration Rider signed by you as part of your loan transaction are incorporated herein by this reference. |

**Applicable Law**     If you do not pay the full amount of an installment when it is due, and we intend to foreclose on the Mortgage, we must comply with the provisions of Section 403 and 404 of the Act of January 30, 1974, which is known as Act No. 6, and the provisions of the Homeowner's Emergency Mortgage Assistance Act (Act No. 91 of 1983).

If this loan is a first mortgage, it is a federally related loan made at an agreed rate authorized by Section 501(a), Part A, Title V, Public Law 96-221, also known as Section 1735f-7(a), Title 12, United States Code.

---

If any provision of this agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this agreement will remain valid and enforceable. Our failure to enforce any provision(s) to this agreement shall not be deemed to constitute a waiver of such term(s). In order for any amendment to this agreement to be valid, it must be agreed to by you and us.

**You acknowledge that before signing this agreement, you have read and received this agreement which includes the Federal Truth-in-Lending disclosure and, as applicable, any other riders and/or disclosures incorporated herein by reference. By signing below, you agree to observe the terms and conditions of this agreement.**

**ANY ADVANCE OF FUNDS PURSUANT TO THIS LOAN AGREEMENT AND THE MORTGAGE WHICH SECURES THE AGREEMENT MAY, IN THE EVENT OF ANY DEFAULT, RESULT IN THE LOSS OF YOUR HOME OR OTHER REAL PROPERTY PLEDGED AS SECURITY FOR YOUR LOAN.**

Borrower: _Randy W. Polons_                                   Date: _4/16/07_
RANDY W POLONS

Witness: _____

## *Allonge to Note*

Loan Number: 

Borrower(s):  RANDY W POLONS

Loan Date:  04/16/2007

Loan Amount:  $66,514.78

Property Address:  1365 TRAILWOOD LAKE ROAD

WILKES-BARRE, PA 18702-9492

MIN:

Pay to the order of

without recourse.

**Household Finance Consumer Discount Company**

Andrew T. Matsuda

Vice President - Admin. Services Division

"This Endorsement and Allonge ("Allonge"), including the signer's signature, is
being created by the signer electronically. It is the signer's intention (i) to adopt
the signature on the Allonge as the signer's signature, and (ii) that the
signature on the Allonge, when printed, serves as an original signature
authenticating the Allonge for all purposes."

This instrument was prepared by:

<u>Susan Lukatchik</u>
(Name)

575 Pierce St Suite 202 Kingston Pa 18704
(Address)

`07 MAY -8 AM 11: 16`

Return To:
Records Processing Services
577 Lamont Road
Elmhurst IL 60126

UPI #

CERTIFIED PROPERTY IDENTIFICATION NUMBER

MUNICIPALITY _Bear Creek Twp_

PIN MAP _X//S/_ BLOCK _/_ LOT _2_

TRANSFER_____ DIVISION_____

DATE _4-19-07_ _slp_
MAPPING CLERK

## MORTGAGE

☐ IF BOX IS CHECKED, THIS MORTGAGE IS AN OPEN-END MORTGAGE AND SECURES FUTURE ADVANCES.

THIS MORTGAGE is made this day <u>16TH</u> of <u>APRIL</u> <u>2007</u>, between the Mortgagor, <u>RANDY W. POLONS,</u>

(herein "Borrower") and Mortgagee <u>HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY</u>

a corporation organized and existing under the laws of <u>PENNSYLVANIA</u>, whose address is <u>575 PIERCE STREET, SUITE 202, KINGSTON, PA 18704</u>
(herein "Lender").

**The following paragraph preceded by a checked box is applicable.**

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ <u>66,514.78</u>, evidenced by Borrower's Loan Repayment and Security Agreement or Secondary Mortgage Loan Agreement dated <u>APRIL 16, 2007</u> and any extensions or renewals thereof (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on <u>APRIL 16, 2027</u>;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $_____, or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $_____;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon, including any increases if the contract rate is variable; (2) future advances under any Revolving Loan Agreement; (3) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and (4) the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in the County of <u>LUZERNE</u> Commonwealth of Pennsylvania:

SEE EXHIBIT A-LEGAL DESCRIPTION

11-11-05 MTG

REC Book **3007** Page **100362**

-2-

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment

11-11-05 MTG



REC Book **3007** Page **100363**

-3-

and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Volunatary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Peridic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000, as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this security instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured)

11-11-05 MTG



REC Book 3007 Page 100364

-4-

or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Prior Mortgages and Deed of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or

11-11-05 MTG

REC Book **3007** Page **100365**

-5-

governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the contract rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may take or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability

11-11-05 MTG

of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of a Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The**

11-11-05 MTG [redacted]

[redacted]

REC Book 3007 Page 100367

-7-

notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof, in abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 7 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. Waiver of Homestead. Borrower hereby waives all right of homestead exemption in the Property under state or Federal law.

22. Interest Rate After Judgment. Borrower agrees the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

23. Arbitration Rider to Note. The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage.

11-11-05 MTG

-8-

## REQUEST FOR NOTICE OF DEFAULT
## ──────────AND FORECLOSURE UNDER SUPERIOR──────────
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

_____
Randy W Polons ────────────── -Borrower

_____
-Borrower

I hereby certify that the precise address of the Lender (Mortgagee) is: _____

_____575 Pierce St Suite 202 Kingston Pa 18704_____

On behalf of the Lender. By: ___Frank N Mazzitelli____ Title: __Manager_____

COMMONWEALTH OF PENNSYLVANIA, __Luzerne_____ County ss; __Pa__

I, ___Sandra J Kelly_____ a Notary Public in and for said county and state, do hereby certify that __Randy W Polons__
personally known to me or proven satisfactorily to be the same person(s) whose name(s) ___is__ subscribed to the foregoing instrument, appeared before me this day in person, and acknowledge that he ____signed and delivered the said instrument as ___his____ free voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this __16th__ day of ___April_____, 20_07_.

> NOTARIAL SEAL
> SANDRA J KELLY
> Notary Public
> PLAINS TWP,LUZERNE COUNTY
> My Commission Expires Jun 15, 2008

My Commission expires: _____
Notary Public

COMMONWEALTH OF PENNSYLVANIA, _____ County ss:

I, _____ a Notary Public in and for said county and state, do hereby certify that _____
personally known to me or proven satisfactorily to be the same person(s) whose name(s) _____ subscribed to the foregoing instrument, appeared before me this day in person, and acknowledge that he ____signed and delivered the said instrument as _____ free voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this _____ day of _____, 20_____.

My Commission expires: _____
Notary Public

11-11-05 MTG

REC Book 3007 Page 100369

-9-

(Space Below This Line Reserved For Lender and Recorder)—————————

REC Book 3007 Page 100370

11-11-05 MTG

## EXHIBIT A (PAGE 1)

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF BEAR
CREEK IN THE COUNTY OF LUZERNE AND COMMONWEALTH OF
PENNSYLVANIA, BEING DESCRIBED AS FOLLOWS:  MAP/PLATE NO.
███████████  BEING MORE FULLY DESCRIBED IN A DEED DATED
06/03/1993 AND RECORDED 06/11/1993, AMONG THE LAND RECORDS
OF THE COUNTY AND STATE SET FORTH ABOVE.  IN DEED VOLUME 2459
AND PAGE 36.  TAX MAP OR PARCEL ID NO.: ██████████

RECORDER OF DEEDS
LUZERNE COUNTY
PENNSYLVANIA

INSTRUMENT NUMBER
████████████

RECORDED ON
Apr 19, 2007
10:39:18 AM
BOOK:REC/3007
PAGE:100362
Total Pages: 10

| | |
|---|---|
| PA WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| LUZERNE COUNTY RECORDING FEE | $25.00 |
| LUZERNE COUNTY ARCHIVES FEE | $2.00 |
| LUZERNE RECORDER'S ARCHIVES FEE | $3.00 |
| LUZERNE COUNTY HOUSING TRUST FUND | $13.00 |
| TOTAL PAID | $53.50 |

INV ████████



I hereby CERTIFY that this
document is recorded in the
Recorder of Deeds Office of
Luzerne County, Pennsylvania.

Mary K Dysleski
MARY K. DYSLESKI
RECORDER OF DEEDS

REC Book 3007 Page 100371

RECORDERS OFFICE
LUZERNE COUNTY, PA

INVOICE
0301-RECEIPT                          CK

-- CHARGES --

#001 MORTGAGE                         $53.50

Instrument Number -
Recorded on - Apr 19, 2007 10:39:18 AM
Book/Page: REC/3007/100362
Total Pages: 10
Municipality - BEAR CREEK TOWNSHIP
Mortgagor - POLONS, RANDY W.
Mortgagee - HOUSEHOLD FINANCE CONSUMER DISCOUNT
          COMPANY
Consideration - $66,514.78
PARCEL IDENTIFICATION NUMBER

Fee Detail:
  HOUSING TRUST FUND                  $13.00
  JCS/ACCESS TO JUSTICE FEE           $10.00
  PAGES RECORDING FEE                 $25.00
  PA WRIT TAX                          $0.50
  ARCHIVES FEE-COUNTY                  $2.00
  ARCHIVES FEE-RECORDER                $3.00
Comment - SEE DEED

TOTAL CHARGES                         $53.50

-- PAYMENTS --

CHECK: 7164851626                     $53.50

TOTAL PAYMENTS                        $53.50

AMOUNT DUE                            $53.50
PAYMENT ON INVOICE                  ($53.50)
BALANCE DUE                            $0.00

Customer ID: HFC
  HOUSEHOLD FINANCE CORPORATION
  577 LAMONT RD.
  P.O. BOX 8635
  ELMHURST, IL 60126-9942

THANK YOU
MARY K. DYSLESKI
RECORDER OF DEEDS
COUNTY # 40
04/19/2007 10:39:13 AM

Prepared By:
Janine Tarnowski,
HSBC CONSUMER LENDING
577 LAMONT ROAD
ELMHURST, IL 60126
███████████

When Recorded Return To:
ASSIGNMENTS
HSBC CONSUMER LENDING
577 LAMONT ROAD
ELMHURST, IL 60126

Assessor's/Tax ID No ███████████

CERTIFIED PROPERTY IDENTIFICATION NUMBER

MUNICIPALITY *Bear Creek Twp*

PIN MAP *KIIS* / BLOCK *1* LOT *2*

TRANSFER _____ DIVISION _____

DATE *10-8-08* _____

MAPPING CLERK

---

## CORPORATE ASSIGNMENT OF MORTGAGE

Luzerne, Pennsylvania
SELLER'S SERVICING ███████ "POLONS"

MERS # ███████████

Date of Assignment: June 13th, 2008
Assignor: Household Finance Consumer Discount Company
Assignee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

I hereby certify the precise address of the within named Assignor is 577 LAMONT ROAD, ELMHURST,
IL 60126.

I hereby certify the precise address of the within named Assignee is 3300 S.W 34TH AVENUE, SUITE
101, OCALA, FL 34474

Executed By: RANDY W. POLONS  To: HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY
Date of Mortgage: 04/16/2007 Recorded: 04/19/2007  in Book/Reel/Liber: 3007 Page/Folio: 100362 as
Instrument/Document: ███████ in Luzerne, Pennsylvania
1365 TRAILWOOD LAKE ROAD, WILKES-BARRE, PA  18702 in the Township of BEAR CREEK

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt
and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage together with the Note or Notes or other evidence of indebtedness (the
"Note"), said note having an original principal sum of $66,514.78 with interest, secured thereby, together
with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full
benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor
hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the Security
Instrument.

TO HAVE AND TO HOLD the said Security Instrument and Note, and also the said property unto the
said assignee forever, subject to the terms contained in said Security Instrument and Note.

REC Book 3008 Page 226451

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

Household Finance Consumer Discount Company
On June 13th, 2008

By: _____
JANINE TARNOWSKI, Vice- President



Seal

STATE OF Illinois
COUNTY OF Cook

On June 13th, 2008, before me, DENNIS SMOTHERS, a Notary Public in and for Cook in the State of
Illinois, personally appeared JANINE TARNOWSKI, Vice- President of Household Finance Consumer
Discount Company, personally known to me (or proved to me on the basis of satisfactory evidence) to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_____
DENNIS SMOTHERS
Notary Expires: 03/06/2010

"OFFICIAL SEAL"
DENNIS SMOTHERS
Notary Public, State of Illinois
My Commission Expires 03/6/10

(This area for notarial seal)

CORDER OF DEEDS
UZERNE COUNTY
PENNSYLVANIA

NSTRUMENT NUMBER

RECORDED ON
10, 2008
11:54 AM
OK:REC/3008
AGE=226451
Total Pages: 2

IT TAX          $0.50
ACCESS TO       $10.00
CE
NE COUNTY       $18.00
DING FEE
NE COUNTY       $2.00
VES FEE
NE RECORDER'S   $3.00
VES FEE
PAID            $33.50

I hereby CERTIFY that it
document is recorded in the
Record-r of Deeds Cffice of
Luzerne County Pennsylvania
JAMES RED OBRISH,
RECORDER OF DEEDS

REC Book 3008 Page 226452

### *JOAN HOGGARTH*
### *LUZERNE COUNTY CLERK OF RECORDS*
### *DIVISION OF JUDICIAL SERVICES AND RECORDS*



**Recorder of Deeds Division**
**Luzerne County Courthouse**
**200 N. River Street**
**Wilkes-Barre, PA 18711**
**(570) 825-1641**

*RETURN DOCUMENT TO:
RESIDENTIAL REAL ESTATE REVIEW, INC.
3217 DECKER LAKE DR
WEST VALLEY CITY, UT 84119-3284

**Instrument Number** ███████
Recorded On 5/12/2023 At 8:36:14 AM
* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - ███████          **\*Total Pages - 3**
* Mortgagor - MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. POLONS, RANDY W.
* Mortgagee - CSMC 2019-RPL7 TRUST
* Customer - SIMPLIFILE LC E-RECORDING

* FEES

| | |
|---|---|
| PA WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| COUNTY RECORDING FEE | $18.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| RECORDER'S ARCHIVES FEE | $3.00 |
| PIN CERTIFICATIONS | $20.00 |
| TOTAL PAID | $83.75 |

I hereby CERTIFY that this document is
Recorded in the Recorder of Deeds Office
of Luzerne County, Pennsylvania



Joan Hoggarth
Joan Hoggarth
Clerk of Records
Recorder of Deeds Division

PARCEL IDENTIFICATION NUMBER
K11S1-1-2
Total Property Identification Numbers: 1

## THIS IS A CERTIFICATION PAGE

# Do Not Detach

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

**INSTRUMENT NUMBER** ███████          **BOOK: 3023  PAGE: 82102**

When Recorded Return To:
Residential RealEstate Review
Collateral Document Services
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
██████████         -        BEAR CREEK TOWN
        CERTIFIED 05/11/2023 BY RF
```

**Assessor's/Tax ID No.** ████████

## CORPORATE ASSIGNMENT OF MORTGAGE

**Luzerne, Pennsylvania**
**Residential RealEstate Review#** ████████

**MIN** ████████████

Date of Assignment: ____ **MAY 0 8 2023**

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.("MERS") AS MORTGAGEE, ITS SUCCESSORS AND ASSIGNS. at P.O. Box 2026, Flint, MI 48501-2026 and 11819 Miami St., Suite 100, Omaha, NE 68164
Assignee: CSMC 2019-RPL7 TRUST at c/o SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119

Executed By: RANDY W. POLONS To: HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY Dated: 04-16-2007 Recorded: 04-19-2007 as Instrument/Document ████ Book/Reel/Liber REC/3007, Page/Folio 100362 In the County of Luzerne, State of Pennsylvania.

-Assigned Wholly by HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. Dated: 06/13/2008 Recorded: 10/10/2008 as Instrument No ████ Book/Reel/Liber 3008, Page/Folio 226451

Property Address: 1365 TRAILWOOD LAKE ROAD, WILKES-BARRE, PA 18702 in the Township of BEAR CREEK

I do certify that the precise address of CSMC 2019-RPL7 TRUST is c/o SELECT PORTFOLIO SERVICING, INC, 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119
Attested By:

_au_____

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $66,514.78 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.("MERS") AS MORTGAGEE, ITS SUCCESSORS AND ASSIGNS.
On    **MAY 0 8 2023**

By: _____ **ALEXA VELARDE**
        **ASSISTANT SECRETARY**

STATE OF Utah
COUNTY OF Salt Lake

On,   **MAY 0 8 2023**  , before me, _____**LISA FISH**_____, a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared
_____**Alexa Velarde**_____, _____**Assistant Secretary**_____, of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.("MERS") AS MORTGAGEE, ITS SUCCESSORS AND ASSIGNS., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____**LISA FISH**

```
LISA FISH
Notary Public State of Utah
My Commission Expires on:
July 13, 2025
Comm. Number ███████
```